**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RONALD LOMBARDI, on behalf of himself and all others similarly situated, | CLASS ACTION COMPLAINT |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | CASE NO.: 20-cv-1511 |
| NATIONAL DEBT RELIEF, LLC | |
| Defendant. | |

Plaintiff, Ronald Lombardi, individually and on behalf of all others similarly situated, sues Defendant, National Debt Relief, LLC ("Defendant" or "National Debt Relief"), for violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq*. ("TCPA"), and alleges on personal knowledge, investigation of his counsel, and on information and belief as follows:

## NATURE OF ACTION

1. Plaintiff brings this class action for damages and other equitable and legal remedies resulting from the unlawful conduct of Defendant in negligently or knowingly and/or willfully placing calls to the cellular telephones of Plaintiff and putative Class Members for non-emergency purposes, using an automatic telephone-dialing system without their prior express consent, in violation of the TCPA. Plaintiff and putative Class Members were not National Debt Relief customers at the time the calls at issue were placed. Upon information and belief, these calls were intended for persons other than Plaintiff and putative Class Members.

**JURISDICTION AND VENUE**

2.  This Court has federal question jurisdiction over this matter because Plaintiff's claims arise from violations of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.*, which is a law of the United States. This Court also has original jurisdiction under 28 U.S.C. 1332(d)(2) because the matter in controversy exceeds $5,000,000.00, as each putative Class Member is entitled to $500.00 per call negligently placed in violation of the TCPA, or $1,500.00 per call knowingly and/or willfully placed in violation of the TCPA, exclusive of attorneys' fees, pre-judgment interest, and costs, and is a class action in which Plaintiff is a citizen of a state different from Defendant.

3.  The alleged violations described herein emanated from this District. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), because many of the acts giving rise to this action occurred in this District, Defendant conducts business in this District, and Defendant availed itself of the laws and markets within this District.

**PARTIES**

4.  Plaintiff Ronald Lombardi is, and was, at all times relevant hereto a citizen of the State of Florida.

5.  Defendant National Debt Relief, LLC, is a Limited Liability Company with its principal place of business located at 180 Maiden Lane, 30th FL., New York, NY 10038. Defendant is engaged in a variety of services including debt counseling. It conducts business throughout the United States, and in and throughout the State of New York.

## **THE TELEPHONE CONSUMER PROTECTION ACT OF 1991,**
## **47 U.S.C. § 227,** *et seq.*

6. The TCPA, 47 U.S.C. §§ 227, *et seq.*, was enacted by Congress in 1991 to address consumer complaints about rampant telemarketing practices.

7. Section 227(b)(1)(A)(iii) bans the use of an automatic telephone dialing systems ("auto-dialers") to place telephone calls to cellular telephones unless the consumer has provided prior written consent to receive such calls, or the calls are placed for emergency purposes.

8. The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls. *Mims v. Arrow Fin. Servs., LLC*, --US--, 565 U.S. 368 (2012).

9. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the auto-dialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

10. According to the Federal Communications Commission ("FCC"), "[u]nwanted calls are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls."[1] Indeed, in 2018 alone, the FCC received more than 232,000 complaints.[2]

---

[1] https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.
[2] https://docs.fcc.gov/public/attachments/DOC-356196A1.pdf.

## FACTUAL ALLEGATIONS

11. At all relevant times, Plaintiff was an individual residing in the State of Florida. He is a "person" as defined by 47 U.S.C. § 153(39), and the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

12. Plaintiff is the owner and customary user of cellular telephone number (xxx) xxx-5808 (redacted for privacy). Plaintiff was the called party and recipient of Defendant's calls, as described herein.

13. Plaintiff registered his cellular phone with the National Do Not Call Registry on January 23, 2007.

14. Between approximately October of 2018 to the present, Defendant placed, or caused to be placed, approximately 100 automated calls to Plaintiff's cellular telephone number using an automatic telephone dialing system ("ATDS") or pre-recorded or artificial voice.

15. When receiving many of these calls, Plaintiff was in his home, attempting to enjoy the seclusion of his private domain, uninterrupted by unwanted calls and annoyances of the outside world. The calls intruded upon Plaintiff's seclusion within his home and interrupted his peaceful enjoyment thereof.

16. When Plaintiff answered his cell phone, there was a prerecorded message that instructed him to press 5 to speak with a representative. There were also instructions to press 9 to have the number removed. Plaintiff pressed 9 to have his number removed, however, the calls continued.

17. When Plaintiff spoke with a representative, she identified herself as calling from National Debt Relief and was soliciting for the company's services. Plaintiff asked for the calls to stop but the calls continued.

18. These unwanted and illegal robocalls were very upsetting and frustrating to the Plaintiff and left him with a feeling of helplessness to stop these calls.

19. Plaintiff is not now, nor has he ever been, a National Debt Relief customer. He does not have an account or business relationship with National Debt Relief.

20. Plaintiff did not provide his cellular telephone number to Defendant, nor did he ever provide express consent to Defendant to place calls to his cellular telephone for any reason.

21. Plaintiff requested to opt out of, or for cessation of, Defendant's calls however, he continued to receive calls.

22. All of the calls that Defendant placed and sent, or caused to be placed and sent, to Plaintiff's cellular telephone number were placed and sent using an ATDS or pre-recorded or artificial voice, which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or pre-recorded voice and to dial such numbers, as specified by 47 U.S.C § 227(a)(1).

23. The telephone number Defendant used to contact Plaintiff via an ATDS or pre-recorded or artificial voice was assigned to a cellular telephone service, as described in 47 U.S.C. § 227(b)(1)(A)(iii).

24. The pertinent calls were not placed or sent for emergency purposes, as defined in 47 U.S.C. § 227(b)(1)(A).

17. When Plaintiff spoke with a representative, she identified herself as calling from National Debt Relief and was soliciting for the company's services. Plaintiff asked for the calls to stop but the calls continued.

18. These unwanted and illegal robocalls were very upsetting and frustrating to the Plaintiff and left him with a feeling of helplessness to stop these calls.

19. Plaintiff is not now, nor has he ever been, a National Debt Relief customer. He does not have an account or business relationship with National Debt Relief.

20. Plaintiff did not provide his cellular telephone number to Defendant, nor did he ever provide express consent to Defendant to place calls to his cellular telephone for any reason.

21. Plaintiff requested to opt out of, or for cessation of, Defendant's calls however, he continued to receive calls.

22. All of the calls that Defendant placed and sent, or caused to be placed and sent, to Plaintiff's cellular telephone number were placed and sent using an ATDS or pre-recorded or artificial voice, which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or pre-recorded voice and to dial such numbers, as specified by 47 U.S.C § 227(a)(1).

23. The telephone number Defendant used to contact Plaintiff via an ATDS or pre-recorded or artificial voice was assigned to a cellular telephone service, as described in 47 U.S.C. § 227(b)(1)(A)(iii).

24. The pertinent calls were not placed or sent for emergency purposes, as defined in 47 U.S.C. § 227(b)(1)(A).

25. Defendant's placement of calls using an ATDS or pre-recorded or artificial voice for non-emergency purposes and without Plaintiff's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

26. Consumers who do not want to receive telemarketing calls may indicate their preference by registering their telephone numbers on the national Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2). According to the Federal Trade Commission, the Registry, which was established in 2003, currently has over 239,000,000 active registrations.

27. These registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. *Id*.

28. Because a telephone subscriber listed on the Registry must take an affirmative step to register his or her number, a telemarketer who wishes to call a person listed on the Registry must take a similarly affirmative step, and must obtain the registrant's signed, written agreement to be contacted by the telemarketer. *Id*. § 64.1200(c)(2)(ii). The written agreement must also include the telephone number to which the calls may be placed. *Id*.

29. A person whose number is on the Registry and has received more than one telephone solicitation within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek the greater of actual damages or $500, a figure that may be trebled for willful or knowing violations. 47 U.S.C. § 227(c)(5).

30. Telemarketers who wish to avoid calling numbers listed on the Registry can easily and inexpensively do so by "scrubbing" their call lists against the Registry database. The scrubbing process identifies those numbers on the Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing

calls.

31. To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

32. It has long been the law that a seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls.

33. The provision that establishes a private right of action against an entity that violates the DNC Registry restrictions provides that "[a] person who has received more than one telephone call within any 12-month period **by or on behalf of** the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages and injunctive relief. 47 U.S.C. § 227(c)(5) (emphasis added).

34. Defendant has a corporate policy to use an ATDS or a pre-recorded or artificial voice to place calls to individuals, just as it did to Plaintiff's cellular telephone here.

35. Defendant has a corporate policy to use an ATDS or a pre-recorded or artificial voice, just as it did to the Plaintiff's cellular telephone in this case, with no way for the consumer to cease the placement of calls.

36. Defendant's corporate policy is structured so as to continue to place calls to individuals like Plaintiff, despite the fact these consumers request that Defendant cease the placement of calls.

37. Defendant continued to call him from telephone numbers similar to his number to deceitfully entice him to answer the call.

38. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties do not wish to be called.

39. As a result of each of the calls described above, Plaintiff and putative Class Members suffered an invasion of privacy, as well as particularized and concrete injuries, including the inducement of stress, anxiety, nervousness, embarrassment, distress, and/or aggravation. Plaintiff and putative Class Members also suffered out-of-pocket losses, including the monies paid to their wireless carriers for the receipt of such calls. Additionally, due to both the answered and unanswered calls placed by Defendant, Plaintiff and putative Class Members suffered the expenditure of their time, exhaustion of their cellular telephone batteries, unavailability of their cellular telephones while Defendant's calls were incoming, and trespass upon their respective chattels. All of the above-mentioned injuries were caused by, and/or directly related to, Defendant's placement of calls to Plaintiff and putative Class Members by using an ATDS to call their cellular telephone numbers.

40. In response to Defendant's unlawful conduct, Plaintiff filed this lawsuit and seeks an injunction requiring Defendant to cease all unsolicited cellular telephone calls and an award of statutory damages and actual damages to putative Class Members under the TCPA, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

41. Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and (c)(4) and as detailed in the individual counts below, Plaintiff brings this action on behalf of himself and all others similarly situated. Specifically, Plaintiff brings this case on behalf of a class defined as follows:

> All persons within the United States who, between four years prior to the filing of this lawsuit and the present, (1) received a non-emergency call to their cellular telephone numbers; (2) through the use of an automatic telephone-dialing system or an artificial or pre-recorded voice; (3) from Defendant; and (4) who were not National Debt Relief customers at the time of the calls and text messages, ("the Class" or "Class Members").

The subclass consists of:

> All persons within the United States whose telephone numbers were listed on the Do Not Call Registry, and to whom, at any time within applicable limitations period, more than one call within any twelve-month period was placed by Defendant, (the "Subclass").

Plaintiff reserves the right to amend the Class definition.

42.     Excluded from the Class are Defendant, its employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their Court staff, and Plaintiff's counsel. Members of the above-defined Class can be easily identified through Defendant's records or those of its vendors who placed the calls and/or sent the text messages at issue on behalf of Defendant.

### **Numerosity**

43.     At the time of filing, Plaintiff does not know the exact number of putative Class Members.  However, given the volume of cellular telephone numbers reassigned on a daily basis, and the volume of National Debt Relief customers throughout the United States, Class Members likely number in the thousands, if not hundreds of thousands, and are geographically disbursed throughout the country.[3]

---

[3] According to the Federal Communications Commission, as many as 100,000 cellular telephone numbers are reassigned every day. *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961 (July 10, 2015).

44. The alleged size and geographic disbursement of the putative Class, and relatively modest value of each individual claim, makes joinder of all Class Members impracticable or impossible.

### **Predominance of Common Questions of Law and Fact**

45. This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. The common legal and factual questions include at least the following:

   a. whether Defendant uses an ATDS, or artificial or pre-recorded voice to place calls and/or send text messages to cellular telephones;

   b. whether between four years prior to the filing of this lawsuit and the present, Defendant used an ATDS or artificial or pre-recorded voice to place calls and/or send text messages to the cellular telephones of Plaintiff and putative Class Members;

   c. whether between four years prior to the filing of this lawsuit and the present, Defendant used an artificial or pre-recorded voice in connection with its placement of autodialed calls to the cellular telephones of Plaintiff and putative Class Members;

   d. whether Defendant is subject to the TCPA;

   e. whether Defendant can show that it obtained prior express consent from Plaintiff and putative Class Members to place calls to their cellular telephones using an ATDS or artificial or pre-recorded voice;

   f. whether Defendant's conduct violates the TCPA;

   g. whether Defendant's conduct was knowing and/or willful;

  h. whether Defendant is liable for damages, and the amount of such damages;

  i. whether Plaintiff and putative Class Members are entitled to declaratory relief;

  j. whether Defendant should be enjoined from engaging in conduct in violation of the TCPA in the future; and

  k. whether Plaintiff and Class Members are entitled to any other remedy.

## Typicality

46. Plaintiff's claims are typical of the claims of the putative Class Members, as Plaintiff and Class Members have been injured by Defendant's uniform misconduct – the placement of calls to cellular telephones using an ATDS or artificial or pre-recorded voice for non-emergency purposes and without prior express consent.

47. Plaintiff shares the aforementioned facts and legal claims and/or questions with all putative Class Members. Further, a sufficient relationship exists between Defendant's conduct and the damages sustained by Plaintiff and putative Class Members.

## Adequacy

48. Plaintiff will fairly and adequately protect the interests of putative Class Members and is committed to the vigorous prosecution of this action. Plaintiff has retained counsel experienced in complex consumer class action litigation and matters specifically involving TCPA violations. Plaintiff intends to prosecute this action vigorously and has no interest adverse or antagonistic to those of the Class.

**Superiority**

49. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members' claims is impracticable or impossible for at least the following reasons:

    a. The Class claims predominate over any questions of law or fact (if any) affecting only individual Class Members;

    b. Absent a Class, the Class Members will continue to suffer damage and Defendant's violations of the TCPA will continue without remedy;

    c. Given the size of individual Class Members' claims, few (if any) putative Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed and continues to commit against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

    d. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts, while also increasing the delay and expense to all parties and the courts. Comparatively, the class action device provides economies of scale and allows Class Members' claims to be comprehensively administered and uniformly adjudicated in a single proceeding;

    e. When the liability of Defendant has been adjudicated, claims of all Class Members can be administered efficiently and determined uniformly by the Court;

    f. No difficulty impedes the action's management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the damages caused to them by Defendant's uniform misconduct;

      g.      The litigation and trial of Plaintiff's claims are manageable;

      h.      Defendant has acted and/or refused to act on grounds generally applicable to Plaintiff and the Class by placing calls to their cellular telephone numbers, using an ATDS or artificial or pre-recorded voice, for non-emergency purposes and without their prior express consent, rendering just and appropriate final injunctive relief for the Class; and

      i.      Because Plaintiff seeks injunctive relief and corresponding declaratory and equitable relief for the entire Class, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members and establishing incompatible standards of conduct for Defendant. Additionally, bringing individual claims would burden the courts and result in an inefficient method of resolving this action. As a practical matter, adjudications with respect to individual Class Members would be dispositive of the interests of other Class Members who are not parties to the adjudication and may impair or impede their ability to protect their respective interests. Consequently, class treatment is a superior method for adjudication of the issues in this case.

## CAUSES OF ACTION

### COUNT I
### Negligent Violation of the Telephone Consumer Protection Act
### 47 U.S.C. §§ 227, *et seq*.

50.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 49, as though fully set forth herein.

51. Without prior express consent, Defendant placed calls for non-emergency purposes to the cellular telephones of Plaintiff and Class Members using an ATDS or artificial or pre-recorded voice with the capacity to store or produce telephone numbers to be called.

52. The foregoing acts constitute numerous and multiple negligent violations of the TCPA, including, but not limited to, each of the above-cited provisions of 47 U.S.C. §§ 227, *et seq*.

53. Under 47 U.S.C. § 227(b)(3)(B), and as a result of the alleged negligent violations of the TCPA, Plaintiff and Class Members are entitled to an award of $500.00 in statutory damages for each and every non-emergency call placed and text message sent in violation of the TCPA.

54. Plaintiff and Class Members are also entitled to and seek injunctive relief prohibiting future violations of the TCPA.

55. Plaintiff and Class Members are also entitled to an award of costs and expenses.

## COUNT II
**Knowing and/or Willful Violation of the Telephone Consumer Protection Act**
**47 U.S.C. §§ 227, *et seq.***

56. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 49, as though fully set forth herein.

57. Without prior express consent, Defendant placed calls for non-emergency purposes to the cellular telephones of Plaintiff and Class Members using an ATDS or artificial or pre-recorded voice with the capacity to store or produce telephone numbers to be called.

58. The foregoing acts constitute numerous and multiple knowing and/or willful violations of the TCPA, including, but not limited to, each of the above cited provisions of 47 U.S.C. §§ 227, *et seq*.

59. Pursuant to 47 U.S.C. § 227(b)(3)(B), and as a result of the alleged knowing and/or willful violations of the TCPA, Plaintiff and Class Members are entitled to an award of $1,500.00 in statutory damages for each and every non-emergency call placed in violation of the statute.

60. Plaintiff and Class Members are also entitled to and seek injunctive relief prohibiting future violations of the TCPA.

61. Plaintiff and Class Members are also entitled to an award of costs and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all putative Class Members the following relief against Defendant:

A. $500.00 in statutory damages for each and every call negligently placed and text message negligently sent by Defendant in violation of 47 U.S.C. § 227(b)(1) of the TCPA;

B. $1,500.00 in statutory damages for each and every call willfully and/or knowingly placed and text message willfully and/or knowingly sent by Defendant in violation of 47 U.S.C. § 227(b)(1) of the TCPA;

C. An award of actual damages resulting from Defendant's violations of the TCPA;

D. Injunctive relief seeking the implementation of measures by Defendant to stop future violations of the TCPA;

E. An award of costs and expenses to Plaintiff's counsel;

F.     An order certifying this matter as a class action pursuant to Federal Rule of Civil Procedure 23, certifying the Class defined herein, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel; and

G.  Any additional relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby demands trial by jury on all issues so triable.

Dated: February 19, 2020
Manhasset, NY

Respectfully submitted,

By: *[signature: Paul C. Whalen]*

Paul C. Whalen (PW 1300)
**LAW OFFICES OF PAUL C. WHALEN, P.C.**
768 Plandome Road
Manhasset, NY 11030
Telephone: (516) 426-6870
pcwhalen@protonmail.com

**THE CONSUMER PROTECTION FIRM, PLLC**
Heather H. Jones, Esq. (Florida Bar No. 0118974)
William "Billy" Peerce Howard, Esq.
(Florida Bar No. 0103330)
4030 Henderson Blvd.
Tampa, FL 33629
Telephone: (813) 500-1500, ext. 205
Facsimile: (813) 435-2369
Heather@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
John A. Yanchunis (Florida Bar No. 3246810)
Patrick A. Barthle (Florida Bar No. 99286)
201 N. Franklin St., 7th Floor

Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
jyanchunis@forthepeople.com
pbarthle@forthepeople.com

*Attorneys for Plaintiff*